(13 Misc. Rep. 304.)

## PEOPLE v. FUERST.

(Court of Sessions, Queens County. June, 1895.)

DISORDERLY PERSON—SPECIAL PROCEEDING AGAINST — ARREST WITHOUT WARRANT.

Under Code Cr. Proc. § 900 (contained in part 6, relative to special proceedings of a criminal nature), providing that on a sworn complaint to a police justice, against a person, as being disorderly (a disorderly person being defined by section 899), the magistrate must issue a warrant requiring a peace officer to arrest defendant and bring him before the magistrate for examination, a conviction by the magistrate cannot stand where

arrest was without a warrant, and the complaint· was not prepared till after defendant was arrested as a "disorderly person," and brought before the magistrate.

Appeal from judgment of police justice.

Morton S. Fuerst was convicted of being a disorderly person, and appeals. Reversed.

Clarence Edwards, for appellant.

Daniel Noble, Dist. Atty., for respondents.

GARRETSON, J. This is not a criminal action, but a special proceeding of a criminal nature. Code Cr. Proc. pt. 6, and designation in first line thereunder; People v. Walsh, 33 Hun, 346. The police justice acts as an officer or magistrate, and not as a court. Code Cr. Proc. § 900. The defendant has a right of appeal to this court from the judgment upon conviction. Code Cr. Proc. §§ 515, 749, as amended by chapter 372, Laws 1884. The case of People v. Walsh, supra, decided in September, 1884, overlooked the amendment of 1884, above cited. After careful examination of the books, we fail to find that a "disorderly person," as defined by section 899 of the Code of Criminal Procedure, is, in contemplation of law, guilty of the commission of either a misdemeanor or a felony. While the several specifications set forth in the subdivision of the section undoubtedly refer to acts and omissions, done or intended, which are detrimental to the peace, good order, economy, and general welfare of the state, and some of which are also criminal offenses, yet the proceedings provided to be had thereunder, as respecting disorderly persons, do not lead to a judgment calling for the imposition of a fine or corporal punishment, except incidentally, and as the result of a failure to give the security required by the following section (902). The object thus sought to be accomplished is suppressive prevention, or regulative rather than punitive. People v. Sadler, 97 N. Y. 146. It has been well said that the examination and punishment of offenses in a summary manner· by magistrates, without the intervention of a jury, is founded entirely upon special authority conferred and regulated by statute. No new offense is cognizable in that manner unless expressly made so by statute; and all the proceedings under an authority so created must be strictly conformable to the regulations prescribed by law in each instance, from which all their force is derived. Barb. Cr. Law (2d Ed.) p. 586, c. 3. In the proceeding under review the statute calls for a complaint on oath, by which the proceeding is instituted, and upon which is to issue a warrant requiring a peace officer to arrest the defendant and bring him before the magistrate for examination. Code Cr. Proc. § 900. It would be manifestly improper and unprecedented to arrest without a warrant, if the alleged offense were referable to the first subdivision of section 899, which is directed to "persons who abandon their wives and children without adequate support, or leave them in danger of becoming a charge upon the public, or who neglect to provide for them according to their means," and, if so, there can be no justification for a departure from the plain require-

ments of law and practice in the case of any alleged disorderly person coming within any of the specifications set forth in the various subdivisions of the section.     It is true that some of the specified acts which bring the alleged offender within the definition of a "disorderly person" constitute positive crimes, such as common gambling and the keeping of bawdyhouses, and render him amenable to prosecution therefor (Pen. Code, §§ 322, 344), but in such cases he is to be arrested and prosecuted in the usual and ordinary mode provided by law where a felony or misdemeanor has been committed.   People v. Sadler, supra.   The return shows, in the case at bar, that the defendant was arrested by the officer as a "disorderly person" under the section cited, and taken before the magistrate, where for the first time, and while in actual custody, the complaint was prepared and sworn to and arraignment made.   We have thus a clear and unquestioned case presented as to whether the magistrate proceeded irregularly and in violation of the defendant's rights.

We would also call attention to the fact that, among the several classes of quasi criminal offenses to be found in the Code of Criminal Procedure under the general designation of "special proceedings of a criminal nature" (part 6), the right to arrest without a warrant is expressly conferred in cases of vagrancy only (sections 890, 894, 895), and it may, therefore, be assumed that the legislature intended to restrict this right to the cases in which it was specifically authorized.   "Expressum facit cessare tacitum."   We are of the opinion that this special proceeding must be instituted by complaint and warrant; that section 177 of the Code of Criminal Procedure, which allows a peace officer to arrest a person for a crime committed or attempted in his presence, does not apply thereto; that the motion of defendant's counsel for the defendant's discharge, made upon the arraignment, should have been granted because addressed to the violation of a substantial right of the defendant; and that the judgment upon conviction should be reversed.   Aside from the question of procedure which we have considered, it would seem doubtful if the "fish pond game" conducted by the defendant comes within the definition of an "apparatus or device for gaming."   The common law defined "gaming" as a contract between two or more persons by which they agree to play by certain rules at cards, dice, or other contrivance, and that one shall be the loser and the other the winner.   Bouv. Law Dict.   This "fish pond game" as conducted by the defendant invariably returned to the successful angler an article of some value for the money invested.   While in some of the states all games upon the result of which the right to money or property is made dependent altogether upon skill or chance, or upon both, are classified under the general head of gaming or gambling, yet in this state a distinction has been made by statute between gaming and lotteries, as will be found by reference to chapters 7 and 9 of title 10 of the Penal Code.   By section 323 a lottery is defined to be "a scheme for the distribution of property by chance among persons who have paid or agreed to pay a valuable consideration for the chance, whether called a lottery, raffle, or gift enter-

prise, or by some other name." Inasmuch as the defendant's "fish pond game" seems to involve no element of chance, and calls wholly for the exercise of skill, it is doubtful if it is subject to the inhibition against lotteries. In most instances the chances are that the anglers will be found to be unskillful, but that would not make the result of the angling dependent upon chance. It has been expressly held by the supreme court that the various provisions contained in chapter 9 of the Penal Code above cited relating to gaming were intended to prevent gambling in the ordinary acceptation of the term, by cards, dice, or other symbols of chance or hazard, in places more or less private or secluded, and which, in itself, without reference to any other element, was malum prohibitum and malum in se. People v. Todd, 51 Hun, 446, 4 N. Y. Supp. 25. But whether the defendant offended against the statutes prohibiting gaming or lotteries we express no opinion and do not decide.

Our conclusion in this case will not embarrass the officers of the law charged with the duty of detecting crime and bringing offenders to the bar of the courts for trial and punishment, nor from suppressing unlawful practices injurious to society and morals. The criminal law and procedure will be found entirely ample to the attaining of these objects. It will, however, we trust, serve to protect the citizen in his substantial rights, insure the observance of the forms of law in the class of cases of which the subject of this appeal is one, and discourage a wanton violation of the right of personal liberty too often shown in arrests made by peace officers in disregard of the statutory limitation placed upon their powers.

The judgment upon conviction should be reversed. Judgment reversed.